**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                    :
LEIGH CAISSIE,                                      :
                                                    :     Hon. Joseph H. Rodriguez
          Plaintiff,                                :
                                                    :     Civil No. 1:08-cv-0303 (JHR)
          v.                                        :
                                                    :     **OPINION**
CITY OF CAPE MAY, CITY OF CAPE MAY                  :
POLICE DEPARTMENT, SGT. ANTHONY                     :
MARINO, SGT. KENNETH COOPER,                        :
CABANA'S BEACH BAR & GRILL, JOHN                    :
DOE POLICE OFFICERS 1 - 10                          :     ***Attorney for Plaintiff*:**
                                                    :     David R. Castellani, Esq.
          Defendants,                               :     Castellani Law Firm, LLC
                                                    :     450 Tilton Road
and                                                 :     Suite 245
                                                    :     Northfield, NJ 08225
CITY OF CAPE MAY, CITY OF CAPE MAY                  :
POLICE DEPARTMENT, SGT. ANTHONY                     :
MARINO, SGT. KENNETH COOPER                         :     ***Attorney for Public Defendants:***
                                                    :     A. Michael Barker, Esq.
          Jointly, Severally and in the Alternative :     Linwood Greene
          Defendants/Third Party Plaintiffs,        :     210 New Road
and                                                 :     Suite 12
                                                    :     Linwood, NJ 08221
FROG SPRING CORP. & LBH, LLC t/a                    :
CABANA'S AND MARTINI BEACH                          :     ***Attorney for Private Defendant:***
RESTAURANT [Improperly pled as                      :     Philip T. Ciprietti, Esq.
Cabana's Beach Bar & Grill]                         :     79 South Maple Avenue
                                                    :     P.O. Box 1009
          Third Party Plaintiffs,                   :     Marlton, NJ 08053
                                                    :
          v.                                        :
                                                    :
NICHOLAS M. BALDWIN                                 :
                                                    :
          Third Party Defendant.                    :
_____             :


This matter comes before the Court on a Motion to Dismiss filed by Defendants

Kenneth Cooper, Anthony Marino, City of Cape May, and City of Cape May Police Department ("Public Defendants") on October 3, 2008, as well as on a Motion to Dismiss filed by Defendant Cabana's Beach Bar & Grill ("Private Defendant") on October 9, 2008.[1]  Public Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Alternatively, Public Defendants request that Plaintiff provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), assuming the qualified immunity issue cannot be resolved at this point in the litigation.  As for Private Defendant, it contends that Plaintiff's claim should be dismissed pursuant to N.J. Stat. Ann. § 2A:22A-1, et seq.[2]  Plaintiff Leigh Caissie opposes both motions.  Oral Argument was held on May 18, 2009.

## I. Jurisdiction

This case is a civil action over which the district court has original jurisdiction based on a question "arising under the Constitution, laws, or treaties of the United States."  See 28 U.S.C. § 1331.  Here, Plaintiff asserts a substantive due process claim pursuant to 42 U.S.C. § 1983.  With respect to Plaintiff's state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This case was removed from the Superior Court of New Jersey, Law Division, Cape May County, on January 16, 2008 pursuant to 28 U.S.C. § 1446.

---

[1]    Private Defendant refers to itself as "Frog Spring Corp. & LBH, LLC t/a Cabana's and Martini Beach Restaurant".  (Private Def. Br. 3.)  As such, Private Defendant was improperly pled as "Cabana's Beach Bar & Grill".  Where appropriate, Private Defendant is referred to as "Cabana's" in this Opinion.

[2]    The short title for this statute is the "New Jersey Licensed Alcoholic Beverage Server Fair Liability Act".  See N.J. Stat. Ann. § 2A:22A-1, et seq.  Specifically, Private Defendant contends that Plaintiff's claim must be dismissed for failure to allege sufficient facts to establish damages under that Act.  (Private Def. Br. 8.)

2

## II. Factual Background

Because this matter comes before the Court on Defendants' motions to dismiss, the Court must accept as true Plaintiff's factual allegations in the Complaint. The facts are as follows. On November 23, 2005, Plaintiff Leigh Caissie was violently assaulted by her then-boyfriend Nicholas Baldwin (Third-Party Defendant) at Cabana's in Cape May, New Jersey. (See Compl. p.1 ¶ 1.) Baldwin was visibly intoxicated at Cabana's that day, (id. at p.6 ¶ 3), but was nonetheless served alcoholic beverages. (Id. at p.7 ¶ 6.) The City of Cape May Police Department was called to Cabana's to respond to the incident. (Id. at p.1 ¶ 2.)

Sergeant Kenneth Cooper arrived at Cabana's and arrested Baldwin. (Id.) With the assistance of Sergeant Anthony Marino, Sergeant Cooper took Baldwin into police custody. (Id. at ¶ 4.) Baldwin subsequently informed Sergeants Cooper and Marino that he was on probation for an aggravated assault offense occurring in Wildwood, New Jersey. (Id.) Baldwin also informed Sergeants Cooper and Marino that it "was not over" between him and Plaintiff. (Id. at ¶ 5.) Despite this information, Cape May Police released Baldwin that evening, November 23, 2005. (Id. at ¶ 6.)

After releasing Baldwin, Sergeants Cooper and Marino contacted Lower Township Police Department to warn them of the possibility of future contact and altercations between Baldwin and Plaintiff. (Id. at ¶ 7.) At no time did Sergeants Cooper and Marino call Plaintiff to provide notification of Baldwin's release. (Id. at ¶ 8.) That night, Baldwin attacked Plaintiff causing her severe and permanent injuries. (Id. at ¶ 9.) Plaintiff has sought, and continues to seek, medical treatment as a result of these injuries. (Id. at ¶ 11.)

3

### III.  Standard of Review

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).  Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)."  Id. (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  These allegations and inferences must be viewed in the light most favorable to the plaintiff.  Id.  However, the Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness."  Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932,

92 L.Ed.2d 209 (1986)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)

(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit

either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to

dismiss.")).

It is not necessary for the plaintiff to plead evidence.  <u>Bogosian v. Gulf Oil Corp.</u>,

561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the

plaintiff will ultimately prevail.  <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 150 (2007).

Instead, the Court simply asks whether the plaintiff has articulated "enough facts to

state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

## IV. Discussion

To begin, Plaintiff stipulates to the dismissal of any and all claims against Cape May

Police Department.  (Pl. Opp'n Br. 2.)  Plaintiff concedes that "the proper municipal defendant

is the City of Cape May."  (<u>Id.</u>)  As a result, Defendant Cape May Police Department is

hereby dismissed from this action.  With respect to the remaining Public and Private

Defendants, Plaintiff asserts one federal claim arising under 42 U.S.C. § 1983 and

several state law claims arising under N.J. Stat. Ann. § 10:6-1[3], among others.  Because

the Court may decline to exercise jurisdiction over the state law claims if Plaintiff's sole

federal claim is dismissed, the § 1983 claim becomes a threshold issue.  <u>See</u> <u>Cunningham</u>

<u>v. Lenape Regional High Dist. Bd. of Educ.</u>, 492 F. Supp. 2d 439, 451 (D.N.J. 2007)

(declining to exercise supplemental jurisdiction over New Jersey Civil Rights Act claim

after dismissing the plaintiff's sole federal claim).  Accordingly, it is appropriate to

---

[3]     Plaintiff alleges that Public Defendants violated her rights under the New Jersey
Civil Rights Act.  <u>See</u> N.J. Stat. Ann. 10:6-1.

analyze Plaintiff's substantive due process claim first.

### A. §1983 and State Created Danger Doctrine

Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws.  See Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L.Ed.2d 433 (1979).  By its own words, therefore, Section 1983 "does not . . . create substantive rights."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing McCollan, supra).  To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."  Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Teder, 95 F.3d 1199, 1204 (3d Cir. 1996)).  Notably, complaints alleging municipal liability under Section 1983 are not subject to heightened pleading standards.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, et al., 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L.Ed.2d 517 (1983) (contrasting pleading requirements for allegations of municipal liability under § 1983 with that of "fraud or mistake").

Here, Plaintiff alleges that the "deliberate indifference to [her] . . . was so egregious as to constitute a due process violation protectable pursuant to 42 U.S.C. §

6

1983." (Compl. p.3 ¶ 2.)  She further alleges that:

> 3.       . . . [T]he ultimate harm to the plaintiff was foreseeable by the defendants and that such defendants willfully disregarded the safety of the plaintiff by using their authority as police officers of the City of Cape May to create an opportunity for plaintiff's attacker to locate her on November 23, 2005 after release from custody and forcibly assault and beat the plaintiff.

> 4.       . . . [T]he individual defendants in releasing the plaintiff's attacker were acting pursuant to official policy or custom of the City of Cape May and the City of Cape May Police Department. . .

> 5.       As a direct and proximate result of defendant's violation of plaintiff's civil rights plaintiff was caused to be severely beaten and permanently injured. . .

(Compl. p.4 ¶¶ 3-5.)  In sum, Plaintiff seeks to allege a substantive due process violation under the Due Process Clause of the Fourteenth Amendment.  U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").

To be sure, there is an indisputable "constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment."  Phillips, 515 F.3d at 235.  This liberty interest is protected because "[t]he touchstone of due process is protection of the individual against arbitrary action of government."  Stolzer v. City of Philadelphia, 2003 WL 2229951, at *2 (E.D.Pa. Sept. 30, 2003) (citing Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974)).  Notwithstanding that interest, the Due Process Clause places no positive obligation on the State to ensure the safety of, or otherwise affirmatively protect, its citizens.  Phillips, 515 F.3d at 235 (citing DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 196-197, 109 S. Ct. 998, 103 L.Ed.2d 249 (1989) (rejecting the view

that the Constitution imposes "affirmative obligations" on the State, and holding that "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide them."). The reasoning that informs this conclusion is the original intent of the Due Process Clause. See DeShaney, 489 U.S. at 196 (observing that the Due Process Clause was designed "to protect the people from the State, not to ensure that the State protected them from each other."); accord Jackson v. City of Joliet, 715 F.2d 1200, 1203 (7th Cir. 1983) ("The Fourteenth Amendment . . . sought to protect Americans from oppression by state government, not to secure them basic governmental services.").

Significantly, the Third Circuit recognized an exception to this rule when it adopted the state created danger theory. See Kneipp v. Teder, 95 F.3d 1199, 1211 (3d Cir. 1996) (holding "that the state created danger theory is a viable mechanism for establishing a constitutional claim under 42 U.S.C. § 1983."). Under that theory, "the state may assume responsibility for the safety of an individual for whom it affirmatively *creates* or *enhances* a risk of danger." Kaucher, 455 F.3d at 431 (emphasis added). Four elements are required to allege a cognizable claim:

(1)    the harm ultimately caused was foreseeable and fairly direct;

(2)    a state actor acted with a degree of culpability that shocks the conscience;

(3)    a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4)    a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more

8

vulnerable to danger than had the state not acted at all.

Id. (citing Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)).

In the instant case, Public Defendants focus on the fourth and second elements as the basis for their motion to dismiss.  (Public Def. Br. 12; Public Def. Reply Br. 13.) Although they make no argument regarding elements one and three, Public Defendants do not concede these points to Plaintiff.  For the sake of completeness, then, each element of the state created danger claim is examined below.

*1. Foreseeability and Directness*

To satisfy the first element of a state created danger claim on a motion to dismiss, "a plaintiff must . . . plead that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions."  See Morse v. Lower Merion School District, 132 F.3d 902, 908 (3d Cir. 1997).  Here, Plaintiff alleges under the Second Count of her Complaint that the "ultimate harm to the plaintiff was foreseeable by the defendants". (Compl. p.4 ¶ 3.)  This bald assertion typically is insufficient to withstand a motion to dismiss.  See Morse, 132 F.3d at 908 ("[W]e need not accept 'bald assertions' or 'legal conclusions' contained in the complaint.").  There are additional facts alleged, however, that bring Plaintiff over the threshold on this first element.

To begin, Plaintiff alleges that Public Defendants were aware of Baldwin's history of violence.  (Compl. p.2 ¶ 4) ("[Defendants] knew or should have known . . . that Mr. Baldwin had . . . a previous restraining order issued against him by the plaintiff for another incident of domestic violence and . . . was currently on probation for aggravated assault.").  Indeed, the very incident that predicated Baldwin's arrest on November 23, 2005 was an alleged assault on Plaintiff at Cabana's.  (Compl. p.1 ¶ 1.)  Plaintiff also

9

alleges that Baldwin told Public Defendants that it "was not over". (Compl. p.4 ¶ 5.) These facts stand in stark contrast to the facts in Morse, supra, at 904-05, where the defendant's lacked any knowledge of the assailant's "violent propensities". Compare 132 F.3d at 908 (holding that the defendants "could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party"). To be sure, it is not necessary to plead a history of violence in order to overcome a motion to dismiss on foreseeability grounds; see Phillips, 515 F.3d at 237 ("We have never held that to establish foreseeability, a plaintiff must allege . . . 'a history of violence.' "), awareness of a *risk* of violence or harm will suffice. Id. at 238-239 (emphasis added). Considering the facts provided above, such awareness is sufficiently alleged in the complaint. Foreseeability is therefore satisfied.

Next, a well-pleaded complaint must also allege directness. Id. at 239. Stated differently, the complaint must "allege that the attack or harm is a 'fairly direct' result of the defendant's acts." Id. An appropriate guidepost for directness is randomness; there is a distinction "between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a random individual with no connection to the harm-causing party." Id. (citing Morse, 132 F.3d at 909). Here, Plaintiff was the girlfriend of the assailant. Moreover, the incident which formed the basis of Baldwin's arrest was a confrontation between the couple. Mere randomness, therefore, is not at work. As the injury occurred on the same night that Baldwin was released from Public Defendants' custody, concerns of attenuation are mitigated. In light of the foregoing, and notwithstanding Defendant's token opposition, Plaintiff satisfies the first element of

10

a state created danger claim.

## 2. *Shocks the Conscience*

By contrast, Plaintiff fails to satisfy the second element of shocks the conscience. Candidly, there is no hard and fast rule to determine when a state actor acts with a degree of culpability such that he or she shocks the conscience. A sliding scale is used "upon which the degree of culpability required to establish such a claim must be measured." Phillips, 515 F.3d at 240. This inquiry is appropriately performed on a case-by-case basis. See Estate of Smith v. Marasco (Smith I), 318 F.3d 497, 508 (3d Cir. 2003) (noting that "the precise degree of wrongfulness required to reach the conscience-shocking level depends on the circumstances of a particular case.").

For guidance, the Third Circuit has ruled that "[t]he level of culpability required to shock the conscience *increases* as the time state actors have to deliberate *decreases*." Sanford v. Stiles, 456 F.3d 298, 309 (3d Cir. 2006) (emphasis added). Thus, when "a defendant is confronted with a hyperpressurized environment such as a high-speed chase . . . it is usually necessary to show that the officer deliberately harmed the victim." Kaucher, 455 F.3d at 426 (citing Estate of Smith v. Marasco (Smith II), 430 F.3d 140, 153 (3d Cir. 2005)) (internal quotations omitted). When "a defendant has the luxury of proceeding in a deliberate fashion," however, "deliberate indifference may be sufficient to shock the conscience." Id. Somewhere between deliberate indifference and harmful intent, in "circumstances involving something less urgent than a 'split-second' decision but more urgent than an 'unhurried judgment,' there is a mid-level standard that requires gross negligence and arbitrariness." Walter v. Pike County, 544 F.3d 182, 193 (3d Cir. 2008) (citing Sanford, 456 F.3d at 308). In sum, the culpability standard is is in

large part a function of timing.[4]  See <u>Smith I</u>, 318 F.3d at 508.

Before assessing whether Public Defendants acted with a degree of culpability that shocks the conscience, the Court must first determine which culpability standard applies.  When compared to a high-speed police chase, <u>see</u> <u>Sanford</u>, 456 F.3d at 305 (applying the high-level 'intent to harm' culpability standard (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 854, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998))), or a social worker's removal of a child from a home, <u>see</u> <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 375 (3d Cir. 1999) (applying the mid-level 'conscious disregard of a great risk of serious harm' or 'gross negligence' culpability standard), it makes sense that the low-level 'deliberate indifference' standard applies to the instant arrest, detention, release, and subsequent failure to warn.  Cooper and Marino acted with 'unhurried judgment' in arresting, detaining[5], and releasing Baldwin.  Their decision to release Baldwin and not warn Plaintiff was made in the context of a controlled custodial setting and "with the luxury of relaxed deliberation".  <u>See</u> <u>Smith I</u>, 318 F.3d at 509.  Consequently, the Court finds that 'deliberate indifference' applies.

The next question, then, is whether Plaintiff has sufficiently alleged deliberate indifference on the part of Public Defendants such that the shocks the conscience element is satisfied.  Here, Plaintiff alleges in pertinent part:

> 10.     The defendant's actions in releasing plaintiff's attacker Mr. Baldwin from their care, custody and supervision after arresting this individual

---

[4]      To neatly summarize, three standards are used with respect to state action that shocks the conscience: (1) deliberate indifference; (2) conscious disregard of a great risk of serious harm; and (3) intent to cause harm.  <u>See</u> <u>Walter</u>, 544 F.3d at 192-193.

[5]      The pleadings do not indicate the length of time that Baldwin was held in custody, other than noting he was eventually released that same night.

for a violent attack on the plaintiff and with knowledge of his probationary status and intent to do further harm to the plaintiff was negligent, careless, grossly negligent and exhibited a reckless indifference for the safety of the plaintiff.

(Compl. p.3 ¶ 10.)

3.   It is further alleged that the ultimate harm to the plaintiff was foreseeable by the defendants and that such defendants willfully disregarded the safety of the plaintiff by using their authority as police officers . . . to create an opportunity for plaintiff's attacker to locate her on November 23, 2005 after release from custody and forcibly assault and beat the plaintiff.

(Compl. p.4 ¶ 3.)  At minimum, these allegations use the appropriate legal language as gleaned from the relevant case law.  But appropriate legal language, without more, is insufficient to withstand a motion to dismiss for failure to state a claim.  This Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).

Indeed, the only allegation suggesting that Public Defendants may have acted with 'deliberate indifference' is the fact that Cooper and Marino failed to warn Plaintiff of Baldwin's release.  (Compl. p.2 ¶ 8.)  Yet, this allegation does not clear the hurdle for Plaintiff.  The mere fact that the officers failed to warn Plaintiff–despite having information regarding Baldwin's violent tendencies–does not shock the conscience in the unique circumstances of this case.  Furthermore, the notification to Lower Township belies any contention that they released Baldwin "with deliberate indifference to the results of their actions."  See Phillips, 515 F.3d at 241.  Given that "it is the misuse of

13

state authority, *rather than a failure to use it*, that can violate the Due Process Clause,"
<u>Phillips</u>, 515 F.3d at 235 (quoting <u>Bright</u>, 443 F.3d at 282), Plaintiff fails to clear this
hurdle on a motion to dismiss.

The underpinnings of this conclusion are strengthened when Public Defendants'
actions are compared to similar actions in another case.  <u>Cf.</u> <u>Stolzer</u>, 2003 WL 22299251
at *2-*5 (dismissing the plaintiff's state created danger claim pursuant to Rule 12(b)(6)
in part because of failure to satisfy the second element).  In <u>Stolzer</u>, an assailant
"stalked, harassed and threatened" the plaintiff for nearly six months.  <u>Id.</u> at *2.  This
harassment stemmed from accusations that the plaintiff–Mr. Tinneny–was having an
affair with the assailant's wife.  <u>Id.</u>  Before holding that the police did not 'willfully
disregard'[6] Tinneny's safety, the Court reviewed the following tragic events:

> In approximately October 2000 Mr. Passalicqua, armed with a gun,
> threatened to kill Tinneny at a future date.  Tinneny informed the City police
> department and the office of the District Attorney of Passalicqua's threats.
> On January 10, 2001 Tinneny obtained an Order of Protection against

---

[6]     Granted, the "willful disregard of safety" standard of <u>Stolzer</u> pre-dates the
refined "shock the conscience" standard of <u>Bright v. Westmoreland</u>.  <u>See</u> 443 F.3d at 281
(holding that a state actor must act "with a degree of culpability that shocks the
conscience").   The Third Circuit discussed the evolution of this culpability standard in
<u>Sanford v. Stiles</u>:

> In assessing the standard of fault in state-created danger cases, we have
> inquired in the past whether 'the state actor acted in willful disregard for the
> safety of the plaintiff.  <u>See, e.g.</u>, <u>Morse</u>, 132 F.3d at 908 (quoting <u>Kneipp</u>, 95
> F.3d at 1208).  More recently, largely in consideration of the Supreme Court's
> decision in <u>Lewis</u>, 523 U.S. at 847-49, 118 S. Ct. 1708, we have acknowledged
> that the fault inquiry requires asking whether the state official 'acted with a
> degree of culpability that shocks the conscience'.  <u>See, e.g.</u>, <u>Bright</u>, 443 F.3d
> at 481.

<u>Sanford</u>, 456 F.3d at 305.  Notwithstanding the use of a different standard, however,
<u>Stolzer</u> remains persuasive due its 'failure to warn' context.

14

Passalicqua under Pennsylvania's Protection from Abuse Act . . . Despite the protection order, Passalicqua continued to stalk, harass, and threaten Tinneny.  Prior to January 19, 2001 Tinneny reported to the City police department that Passalicqua was in violation of the protection order.  As a result, the police obtained an arrest warrant . . . On January 19, 2001 the police arrested Passalicqua and brought him into police headquarters for questioning.  After holding [him] in custody for an unknown period of time, the police agreed to release Passalicqua so that he could go home, put his affairs in order and see his children once more before turning himself back into the police at 1:00 o'clock P.M.  *The police did not notify Tinneny that Passalicqua had been released.*   At approximately 1:15 o'clock P.M. Passalicqua drove to Tinneny's place of employment and shot and killed him.  Passalicqua then committed suicide.

Id. (emphasis added).  The Court noted that, under the circumstances, the police might

have taken "a more active role," but the officers did not willfully disregard the plaintiff's

safety.  Id. at *5.

Stolzer is instructive.  Like Stolzer, the officers in this case did not contact

Plaintiff upon releasing the assailant.  Unlike Stolzer, however, the officers did contact a

local police department.  It follows then, that Public Defendants took 'a more active role'

than the defendants in Stolzer.  Even though the court in Stolzer employed the now-

defunct 'willful disregard' standard, the factual similarity of the case and its subsequent

ruling supports this Court's conclusion today.  Plaintiff fails to plead deliberate

indifference.  Because Plaintiff fails to plead deliberate indifference, she cannot satisfy

the second element of a state created danger claim.  As a result, Plaintiff fails to allege a

claim upon which relief can be granted.  Although this conclusion effectively resolves the

motion to dismiss, for the sake of completeness, the Court examines the remaining third

and fourth elements of the state created danger claim.

### 3. Special Relationship

The third element of a state created danger claim requires that a relationship

exist "between the state and the plaintiff such that the 'plaintiff was a foreseeable victim of the defendant's acts,' or a 'member of a discrete class of persons subjected to the potential harm brought about by the state's actions,' as opposed to a member of the public in general.' " See Bright, 443 F.3d at 281 (citing Kneipp, 95 F.3d at 1209 n.22; and Morse, 132 F.3d at 906, 913).  As stated most recently by the Third Circuit, "[t]he relationship requirement of the third element 'contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense.' " Phillips, 515 F.3d at 242 (quoting Morse, 132 F.3d at 912).

        In Phillips, the Third Circuit found that, for purposes of withstanding a Rule 12(b)(6) motion, Plaintiff sufficiently alleged a special relationship.  Phillips, 515 F.3d at 242.  There, the plaintiff Jeanne Phillips brought a § 1983 action as the representative of the estate of her deceased son–Mark Phillips–against Allegheny County, its 911 center, and several of its employees.  Id. at 228.  Plaintiff's son had been targeted by a rogue 911 employee who used the tools and capabilities of the emergency service for which he worked for the purpose of retribution and murder.  Id. at 229.  The assailant knew that Mark Phillips was the new boyfriend of his ex-girlfriend.  Id.  at 228-29.  Inflamed with passion and rage, the assailant used the 911 dispatch tools to track down Mark and shoot him.  Id.  at 229.  The plaintiff's complaint alleged this triangular relationship.  Id. at 242.  Additionally, the complaint alleged that Mark Phillips was targeted by the assailant for retribution and violence.  Id. at 242-43.  Because of the foregoing allegations, the Third Circuit held that Phillips had "adequately alleged a relationship between plaintiff and the state for purposes of the state-created danger theory."  Id. at 243.

        Here, Plaintiff alleges that Baldwin told the arresting officers it "was not over"

16

between the couple.  (Compl. p.2 ¶ 5.)  Plaintiff also alleges that the officers knew of the restraining order previously issued by Plaintiff against Baldwin.  (Id. at ¶ 4.)  Finally, there is an allegation that Plaintiff and Baldwin were seeing each other in a romantic relationship.  (Id. at p.1 ¶ 2.)  In light of the precedent established in Phillips, supra, these allegations sufficiently satisfy the third element of a state created danger claim.

### 4. Affirmative Act

Lastly, the fourth element of a state created danger claim requires that "a state actor used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."  See Bright, 443 F.3d at 281 (citing DeShaney 489 U.S. at 201).  There are three sub-elements to this fourth element.  Ye v. United States, 484 F.3d 634, 638 (3d Cir. 2007).  First, a state actor must exercise his or her authority.  Id.  Second, a state actor must take some affirmative action; mere assurance is insufficient.  Id. at 638-640.  Third, the act must either create a danger to the citizen or render "the citizen more vulnerable to danger than if the state had not acted at all."  Id. at 639 (citing Bright, 443 F.3d at 281-82).  As emphasized in Bright and underscored in Phillips:

> Liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger.  It is the *misuse of state authority, rather than a failure to use it*, that can violate the Due Process Clause.

Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (quoting Bright, 443 F.3d at 282) (emphasis added).

Here, Plaintiff fails to satisfy the second and third sub-elements.  Consequently, she fails to adequately plead the fourth element of a state-created danger claim.

17

Defendants rely heavily on this fourth element to advance their motion to dismiss.  (Def. Br. 12.)  Defendants contend that "[a]s a matter of law, the act of arresting then releasing Baldwin cannot be the "but for" cause of Plaintiff's subsequent injuries."  (Id.)

In response, Plaintiff contends that "[i]f the [third party] defendant [Baldwin] was detained that night this assault upon the plaintiff would never have happened."  (Pl. Opp'n Br. 5.)  Plaintiff contextualizes this contention with the following facts: (1) Defendants knew Baldwin was serving a probationary term for aggravated assault; (2) Defendants knew that Baldwin said it "was not over" between him and Plaintiff; (3) Defendants knew Baldwin had been drinking; and (4) Defendants failed to inform Plaintiff or a Judge of these facts before his release.  (Id.)  Considering these facts, Plaintiff contends that Defendants used "their authority to create an opportunity [that] would have [not] otherwise existed for the [third party] crime to occur."  (Id.) (alteration to original quote).  Plaintiff's argument is unavailing.

Paragraph six of the First Count provides:

> Despite such notice and or knowledge of Mr. Baldwin's intention to do further harm to the plaintiff and the fact that Mr. Baldwin was currently serving a probationary term, these defendants released Mr. Baldwin from their care, custody and control on November 23, 2005.

(Compl. p.2 ¶ 6.)  To be sure, the first sub-element is sufficiently alleged.  There is no doubt that the police exercised their authority by arresting, detaining, and releasing Baldwin.  By contrast, the second and third sub-elements fail.  It must be underscored that the act–or omission–central to this dispute is the failure to directly warn Plaintiff of Baldwin's release.  This failure to warn does not rise to the level of an affirmative act for purposes of a state-created danger claim.  See Walter v. Pike County 544 F.3d 182, 194-

18

95 (3d Cir. 2008).

Walter is directly on point.  In that case, the Third Circuit upheld a district court's decision to grant qualified immunity to three officers in a state-created danger claim. See There, the plaintiff advanced a similar claim to the one here; namely, the plaintiff sought to hold police officers liable for a failure to warn of a private act of violence. Walter, 544 F.3d at 189.  Although the appeal stemmed from a grant of summary judgment, the holding and reasoning of the court is no less instructive.

The Third Circuit ruled:

[A] state actor's failure to warn about the likelihood of a private act of violence–even a highly culpable failure to warn–cannot itself predicate liability.  Rather, under the fourth element of a state-created danger claim, liability . . . is predicated upon the state's *affirmative acts* which work to the plaintiff's detriments in terms of exposure to danger, and we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.

Walter, 544 F.3d at 194 (citing Bright, 443 F.3d at 282 (internal quotations omitted)). Moreover, "[i]f a state-created danger claim cannot be predicated on a failure to arrest," the Third Circuit opined, "neither can it be predicated on a failure to provide protection."  Walter, 544 F.3d at 195 (citing Bright, 443 F.3d at 284 ("mere failure to protect an individual against private violence does not violate the Due Process Clause.")) (citations omitted).  A failure to provide protection is sufficiently broad to encompass a failure to warn.  For the sake of clarity, however, the Third Circuit concluded–"if an assurance of well-being despite the presence of a threat is not a sufficiently affirmative act, *neither is the mere failure to warn of a threat*."  Walter, 544 F.3d at 195. (emphasis added).

Walter controls the instant issue.  Plaintiff alleges that the officers failed to warn

19

her of Baldwin's release.  It is this lack of warning, despite full knowledge of Baldwin's violent history and threats, which she contends is sufficient to state a claim for a substantive due process violation using the state-created danger theory.  This contention fails.  Even though Walter stemmed from summary judgment, the block-quote cited above envisions the necessary "allegations" to plead the fourth element of a state-created danger claim.  See Walter, 544 F.3d at 194 ("[W]e have never found a state-created danger claim to be meritorious without an *allegation* and subsequent showing that state authority was affirmatively exercised.") (emphasis added).  Because a failure to warn of a threat is insufficient for purposes of pleading an affirmative act, Plaintiff fails to plead the second sub-element of the fourth element of a state-created danger claim.

If more is needed, Plaintiff also fails to plead the third sub-element.  Plaintiff cannot show that Public Defendants either created a risk of danger or enhanced her risk of danger.  Bright, 443 F.3d at 281 (requiring a showing of creation of danger or increase in vulnerability to danger by state actor).  While not binding, two unpublished cases inform this Court's decision.  See generally Green v. City of Philadelphia (Green II), 92 Fed. Appx. 873, 2004 WL 474140 (3d Cir. Mar. 10, 2004); and Stolzer v. City of Philadelphia, 2003 WL 22299251 (E.D.Pa. Sept. 30, 2003).

With respect to Green (II), the plaintiff, Fitz Green, was shot by his lover, Evelyn White, on July 4, 2000.  Green (II), 92 Fed. Appx. at 874.  This shooting occurred approximately one month after the Philadelphia Police "investigated a 'domestic dispute' involving Green and White."  Id.  At the time of the investigation, Green told the police that White had "violent tendencies".  Id.  He also told the police that White had threatened him with a gun.  Id.  In light of these facts, the police took White's gun to

20

secure the situation.  Id.  Then, acting upon belief that the domestic dispute was under

control, the police returned the gun to White.  Id.  Green was ultimately shot in the leg

by White with that very gun one month later.  Id. at 875.

The district court dismissed the plaintiff's § 1983 action, and held that the

plaintiff failed to properly "demonstrate prong four on how 'the state actors used their

authority to create an opportunity that otherwise would not have existed for the third

party's crime to occur.' "  See Green v. City of Philadelphia (Green I), 2003 WL1848731,

at *2 (E.D.Pa. Apr. 9, 2004) (citing Kneipp, 95 F.3d at 1208 (quoting Mark v. Borough of

Hartboro, 51 F.3d 1137, 1152 (3d Cir. 1995)).  The Third Circuit affirmed.  See Green (II),

92 Fed. Appx. at 876.  In doing so, the Third Circuit opined:

> When the officers returned the gun to White, it placed Green in no worse
> position than he would have been in without their temporary intervention,
> and that temporary intervention did not create any guarantee of Green's
> future safety.

Id.  The Court also noted that the shooting was "too remote" to give rise to proximate

cause, in that one month separated the return of the gun and the shooting of the leg.  Id.

As a result, the Third Circuit held that the "City defendants' action did not create any

danger to Green".  Id.

Green (II) is consistent with the recent precedential holding in Walter, supra.

Additionally, Green (II) is persuasive based on the similarity to the facts of the instant

case.  Although there is room to distinguish the instant case based on the temporal

proximity of the state act and its subsequent consequence, (there, one month lapsed,

here one day lapsed), the surrounding circumstances and subsequent ruling are

persuasive.  Like Green (II), here, a dispute was investigated by the police.  Also like

21

Green (II), the police intervened.  There, the officers took away the gun; here, the officers took away Baldwin.  In both cases, the officers had knowledge of the violent tendencies of the assailant.  Extending the logic of the Green (II) to the instant case, the release of Baldwin placed Plaintiff in no worse position than she would have been in without police intervention, and "that temporary intervention did not create any guarantee of [Plaintiff's] future safety."  Green (II), 92 Fed. Appx. at 875-76.

Stolzer v. City of Philadelphia is also persuasive due to its factual and procedural similarity.  See generally 2003 WL 22299251 (E.D.Pa. Sept. 30, 2003).  The facts of that case are detailed above in the section examining the shocks the conscience element.  See supra Part IV.A.2.  Discussing the relevant fourth element of the state-created danger theory, the district court opined:

> While Plaintiff maintains, and it is certainly true, that Passalicqua could not have killed Tinneny during the afternoon of January 19, 2001 if the City had not released Passalicqua from its custody, this does not establish that the City 'created an opportunity that otherwise would not have existed.' In order for the court to find that the City had created such an opportunity, plaintiff must aver some facts which establish that Tinneny 'was in a worse position after the police intervened than [he] would have been if they had not done so.'
>
> . . .
>
> When the City released Passalicqua it did not increase the danger or risk of injury to Tinneny.  The risk of injury to Tinneny remained constant.  There is no allegation or inference in the Complaint to the contrary.  Consequently, plaintiff fails to establish this prong.

Stolzer, 2003 WL at *7 (citing Kneipp, 95 F.3d at 1209) (internal citations omitted).

Here, Plaintiff attempts to satisfy the fourth element by alleging:

> [T]he ultimate harm to the plaintiff was foreseeable by the defendants and that such defendants willfully disregarded the safety of the plaintiff by using their authority as police officers of the City of Cape May to create an opportunity for plaintiff's attacker to locate her on November 23, 2005 after

release from custody and forcibly assault and beat the plaintiff.
(Compl. p.4 ¶ 3.)  Plaintiff further alleges that she was beaten and injured as a "direct
and proximate result" of the officers' conduct.  (Id. at ¶ 5.)  Pointedly, these allegations,
taken as true, fail to establish the third sub-element of the fourth element of a state-
created danger claim.

It is not enough that Plaintiff baldly allege that the officers created an
"opportunity" for Baldwin to attack her.  (Compl. p.4 ¶ 3.)  Plaintiff must also show that
the City either created a danger or rendered her more vulnerable to danger than had the
City not acted at all.  See Bright, 443 F.3d at 281.  Plaintiff has not made such a showing.
Indeed, after the officers released Baldwin, they telephoned Lower Township.  As stated
by the Third Circuit in Walter, "a state actor's failure to warn about the likelihood of a
private act of violence–even a highly culpable failure to warn–cannot itself predicate
liability."  See 544 F.3d at 194.  Plaintiff contends that "[i]f the defendant was detained
that night this assault upon the plaintiff would never have happened."  (Pl. Br. 5.)  This
is precisely the same contention that was rejected in Stolzer, supra, and the Court sees
no reason to accept it today.  It may be true that if the police never released Baldwin, he
would have never attacked Plaintiff.[7]  It may also be true that if judges never grant bail
in criminal cases, defendants will never commit outside crimes before trial.  Ours may
be an imperfect system, but it is the one in which we operate.  Surely more is needed to
establish a constitutional violation.

───────────────

[7]      Plaintiff further states that "if the plaintiff was notified in accordance with the
law, that the defendants were releasing Baldwin, this assault would not have happened."  (Pl. Br.
5.)  This assertion is mere conjecture.  In any event, a failure to warn does not enable Plaintiff to
cross the hurdle on the instant motion to dismiss.

In conclusion, Plaintiff fails to allege that Public Defendants either created a danger or enhanced the risk of danger to Plaintiff.  Because Plaintiff fails to allege the second and third sub-elements, she fails to establish the fourth element of her state-created danger claim.  As a result, Plaintiff has not alleged a claim upon which relief may be granted.  The Court dismisses her substantive due process claim against Public Defendants.[8]

## 2. Remaining Federal Claims

Public Defendants Kenneth Cooper and Anthony Marino contend they are entitled to qualified immunity.  (Public Def. Br. 5.)  Because the Court has not found a constitutional violation, there is no need to examine whether Public Defendants are entitled to qualified immunity.[9]  See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); see also Kaucher v. County of Bucks, 455 F.3d 418, 423 n.2 (3d Cir. 2006) (refraining from conducting qualified immunity analysis where no constitutional violation has been established (citing Saucier, supra)).

For the same reasons, there is no need to examine Plaintiff's Monell claim against

---

[8]     In light of the foregoing analysis, amendment is futile because, given the facts of this case, Plaintiff cannot plead the second or fourth elements of a state-created danger claim. Specifically, Plaintiff cannot plead that Public Defendants' conduct shocks the conscience, and she cannot plead that Public Defendants created danger or enhanced the risk of danger by failing to warn her of Baldwin's release.  Because amendment is futile, Plaintiff need not be given the opportunity to amend her complaint.  See Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

[9]     Accordingly, Public Defendant's Rule 12(e) Motion for a More Definite Statement is rendered moot.

Public Defendant City of Cape May.  See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (holding "[t]here cannot be an award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." (quoting Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003))) (internal quotations omitted); see also Kaucher, 455 F.3d at 423 n.2 (citing Searles v. Se. Penn. Transp. Auth., 990 F.2d 789, 794 (3d Cir. 1993) ("[W]e need not reach the issue of whether [the municipal entity] could be held liable where, as here, we have concluded that no constitutional right was violated.")); and McGrain v. City of Philadelphia, 2006 WL 2668651, at *7 (E.D.Pa. Sept. 15, 2006) ("Because the court has ruled that [the plaintiff] has failed to state a claim alleging a constitutional violation, it follows that [the plaintiff's] due process claims against the city must also be dismissed.") (alteration in original).

### 3. Remaining State Law Claims

Plaintiff also alleges several state law claims.  Against Public Defendants, Plaintiff alleges violation of the New Jersey Civil Rights Act.  See N.J. Stat. Ann. § 10:6-1.  Against Private Defendants, Plaintiff alleges claims grounded in common law negligence and the New Jersey Dram Shop Act.  See N.J. Stat. Ann. § 2A:22A-1, et seq.  In response, Public Defendants assert state law immunity pursuant to the New Jersey Tort Claims Act.  See N.J. Stat. Ann. §§ 59:1-1 to 12-3.  Private Defendants contend that Plaintiff fails to meet the proofs required under the Dram Shop Act.

Because this Court has dismissed Plaintiff's sole federal claim, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims.  Section 1367(c)(3) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.

See 28 U.S.C. § 1367(c)(3).  Other courts faced with similar situations have followed this procedure.  See, e.g., McGrain v. City of Philadelphia, 2006 WL 2668651, at *7 (E.D.Pa. Sept. 15, 2006) (declining to exercise jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(c)(3) when all federal claims have been dismissed); and Cunningham v. Lenape Regional High Dist. Bd. of Educ., 492 F. Supp. 2d 439, 451 (D.N.J. 2007) (same).  As a result, Plaintiff's remaining state law claims are hereby dismissed.

### V. Conclusion

In conclusion, Public Defendants' Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6) is granted.  Plaintiff's state-created danger claim is dismissed for failure to state a claim.  Because no constitutional violation is present, therefore, the Court does not reach the issues of qualified immunity or municipal liability.  Accordingly, Public Defendants' alternative Motion for a More Definite Statement pursuant to Federal Rule of Procedure 12(e) is moot.  The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims against Public and Private Defendants pursuant to 28 U.S.C. § 1367(c)(3).  A state court is better suited to analyze these claims.  Consequently, this case is remanded to state court.

An appropriate ORDER shall follow.


/S/ Joseph H. Rodriguez
U.S.D.J.

Date: May 27, 2009

26